**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 13-24398-CIV-LENARD

ADIDAS AG, *et al.*,

       Plaintiff,

vs.

ADIDAS2013ONLINE.COM, *et al.*,

       Defendants.

                         /

**ORDER GRANTING PLAINTIFFS' *EX PARTE* APPLICATION FOR ENTRY**
**OF TEMPORARY RESTRAINING ORDER**

**THIS CAUSE** is before the Court on Plaintiffs' Ex Parte Application for Entry of Temporary Restraining Order and Preliminary Injunction (the "Application for TRO") (D.E. 4). The Ex Parte Application for TRO asks the Court to issue a temporary restraining order and then a preliminary injunction against various partnerships and unincorporated associations who operate websites that infringe Plaintiffs' respective trademarks and that promote and sell counterfeit versions of Plaintiffs' respective goods. Among other things, Plaintiffs ask that the Court enjoin Defendants from producing or selling goods which infringe their trademarks, and that the Court seize control of the domain names of the infringing websites and redirect the web traffic searching for those domains to another site that displays a copy of the pleadings from this case. Having considered the Application for TRO and pertinent portions of the record, the Court finds as follows.

**I.      PROCEDURAL BACKGROUND**

Plaintiffs, adidas AG, adidas International Marketing B.V., adidas America, Inc. (referred to herein collectively as "adidas"), Reebok International Limited and Reebok International Ltd.

(referred to herein collectively as "Reebok."), and Sports Licensed Division of the adidas Group, LLC (referred to herein as "SLD") (collectively referred to herein as "Plaintiffs"), are suing Defendants, the Partnerships and Unincorporated Associations identified on Schedule "A" hereto and their various unknown associates for trademark counterfeiting and infringement; false designation of origin under section 43(a) of the Lanham Act, 15 U.S.C. §1125(a); cybersquatting under 15 U.S.C. §1125(d); and unfair competition under Florida's common law.  Plaintiffs' Complaint (D.E. 1) alleges that Defendants are promoting, advertising, distributing, offering for sale and selling counterfeit and infringing Plaintiffs' products within the Southern District of Florida through fully interactive commercial Internet websites operating under the domains names identified on Schedule "A" hereto (the "Subject Domain Names").

Plaintiffs allege Defendants' unlawful activities have (1) deprived Plaintiffs of their right to determine the manner in which their trademarks are presented to the public through merchandising; (2) defrauded the public into thinking Defendants' goods are Plaintiffs' authorized goods; (3) deceived the public as to Plaintiffs' sponsorship of and/or association with Defendants' Goods and the websites through which such goods are marketed and sold; (4) wrongfully traded and capitalized on Plaintiffs' respective reputations and goodwill and the commercial value of Plaintiffs' trademarks; (5) wrongfully damaged Plaintiffs' ability to market their goods and educate consumers about their brands via the Internet in a free and fair marketplace and (6) participated in the creation and/or maintenance of an illegal marketplace on the World Wide Web, the purposes of which were to (i) confuse consumers regarding the source of Defendants' goods for profit, and (ii) expand the marketplace for illegal, counterfeit goods bearing Plaintiffs' respective trademarks while shrinking the legitimate marketplace for Plaintiffs' genuine goods.

In the Ex Parte Application for TRO, Plaintiffs move for the issuance of a temporary restraining order, and, upon expiration of the temporary restraining order, a preliminary injunction against Defendants, pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65 and The All Writs Act, 28 U.S.C §1651(a) for alleged violations of the Lanham Act, 15 U.S.C. §§ 1114, and 1125(a) and (d).

## II.    FACTUAL BACKGROUND[1]

Plaintiff adidas manufactures, promotes, distributes, and sells in interstate commerce, athletic footwear, apparel, and sporting equipment under a number of adidas' trademarks. (See Declaration of Jeni B. Zuercher in Support of Plaintiffs' Application for TRO ("Zuercher Decl.") ¶¶ 4-6.) Plaintiff adidas is the registered owner of the following trademarks on the Principal Register of the United States Patent and Trademark Office (the "adidas Marks"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|-----------|--------------------|-------------------|---------------|
| ADIDAS | 0,891,222 | May 19, 1970 | IC25 - sportswear namely, suits, shorts, pants, tights, shirts, gloves, and the like; jerseys; socks; sport shoes namely, track and field training shoes, basketball shoes, and tennis shoes. |
| ▲ | 0,973,161 | November 20, 1973 | IC 13 - tote bags<br><br>IC 25 - specific purpose athletic shoes; general purpose sport shoes, sports wear-namely, suits, shorts, pants, tights, shirts, jerseys, socks, and gloves. |
| adidas | 1,300,627 | October 16, 1984 | IC 025 - sportswear namely, suits, shorts, pants, tights, shirts, jerseys, socks, gloves, jackets, coats, swimwear, sweaters, caps, pullovers, warm-up suits, rain suits, ski suits, jump suits, boots, shoes, slippers. |

---

[1] The factual background is taken from the Application for TRO, and supporting Declarations submitted by Plaintiffs.

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
|  | 1,310,140 | December 18, 1984 | IC 025 - sportswear-namely, suits, shorts, pants, tights, shirts, jerseys, socks, gloves, jackets, coats, swimwear, sweaters, caps, pullovers, warm-up suits, rain suits, ski suits, jump suits, boots, shoes, slippers. |
|  | 2,411,802 | December 12, 2000 | IC 018 - all purpose sport bags, athletic bags, traveling bags, backpacks, knapsacks, beach bags<br><br>IC 025 - sports and leisure wear, namely, shorts, pants, shirts, t-shirts, jerseys, tights, socks, gloves, jackets, swimwear, caps and hats, pullovers, sweat-shirts, sweat suits, track suits, warm-up suits, rain suits; boots, slippers, sandals, specific purpose athletic shoes and general all purpose sports shoes<br><br>IC 028 - sports balls and playground balls; guards for athletic use, namely, shin guards, knee guards and leg guards |

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
|  | 3,104,117 | June 13, 2006 | IC 009 - optical apparatus and instruments, namely, eyeglasses and sunglasses<br><br>IC 014 - horological and chronometric instruments, namely, watches<br><br>IC 018 - leather and imitations of leather, and goods made from these materials in the nature of bags for general and sport use, namely handbags, tote bags, waist packs, overnight bags, backpacks, knapsacks and beach bags; trunks; traveling bags for general and sport use; leather and imitations of leather and goods made from these materials, namely, wallets, briefcases, and key cases<br><br>IC 025 - sports and leisure wear, namely suits, shorts, pants, sweatpants, skirts, skorts, dresses, blouses, shirts, t-shirts, sleeveless tops, polo shirts, vests, jerseys, sweaters, sweatshirts, pullovers, coats, jackets, track suits, training suits, warm-up suits, swimwear, underwear, socks, gloves, scarves, wristbands and belts; headgear, namely caps, hats, visors, headbands; athletic footwear and leisure foot wear, namely boots, sandals, specific purpose athletic shoes and general purpose sports shoes |

The adidas Marks are used in connection with the manufacture and distribution of high quality goods in at least the categories identified above. (See Zuercher Decl.¶ 5; see also United States Trademark Registrations of the adidas Marks at issue attached as Exhibit B to the Zuercher Decl.)

Plaintiff Reebok manufactures, promotes, distributes, and sells in interstate commerce, athletic footwear, apparel, and sporting equipment under a number of Reebok's trademarks. (See Zuercher Decl. ¶¶ 13-15.) Plaintiff Reebok is the registered owner of the following trademarks on the Principal Register of the United States Patent and Trademark Office (the "Reebok Marks"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| REEBOK | 1,133,704 | April 22, 1980 | IC 25 - shoes for use in athletic sports |
|  | 1,848,848 | August 9, 1994 | IC 018 - all purpose sport bags, duffel bags, tote bags, knapsacks, and shoulder bags.<br>IC 025 - footwear and apparel; namely, t-shirts, shirts, sweatshirts, sweaters, jackets, hats, visors, socks, sweatpants, pants, shorts, skirts, unitards, and leotards. |

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| RBK | 3,074,802 | March 28, 2006 | IC 09 - eyewear, namely, eyewear cases; eyewear cleaning cloths; sunglasses; protective helmets for hockey, and skating.<br><br>IC 025 - footwear; headwear; apparel, namely, sweatpants, sweatshirts, shirts, shorts, sweaters, socks, jackets, sweat suits, warm-up suits, shooting shirts, fleece tops, tank tops, polo shirts, pants, athletic bras, leggings, skirts, turtlenecks, vests, dresses, athletic uniforms, gloves, infant wear, running suits.<br><br>IC 028 - sports equipment, namely, basketballs, footballs, rugby balls, soccer balls, in-line skates, hockey skates; protective hockey equipment, namely shin pads, elbow pads, shoulder pads, and pants; protective in-line skating equipment, namely kneepads and elbow pads. |

The Reebok Marks are used in connection with the manufacture and distribution of high quality goods in at least the categories identified above. (See Zuercher Decl.¶ 14; see also United States Trademark Registrations of the Reebok Marks at issue attached as Exhibit B to the Zuercher Decl.)

Plaintiff SLD manufactures, promotes, distributes, and sells in interstate commerce, apparel and headwear under a number of SLD's trademarks. (See Zuercher Decl. ¶¶ 22-24.) SLD is the registered owner of the following trademarks on the Principal Register of the United States Patent and Trademark Office (the "Mitchell & Ness Mark"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|-----------|---------------------|-------------------|---------------|
| MITCHELL & NESS | 2,860,283 | July 6, 2004 | IC 025 - sports jerseys, jackets, shirts, t-shirts, sweaters, caps, hats, head bands and wrist bands |

The Mitchell & Ness Mark is used in connection with the manufacture and distribution of high quality goods in at least the categories identified above. (See Zuercher Decl. ¶ 23; see also United States Trademark Registration of the Mitchell & Ness Mark at issue attached as Ex. C to the Zuercher Decl.)

Defendants, via the Subject Domain Names have advertised, promoted, offered for sale, and/or sold, goods in interstate commerce bearing what Plaintiffs have determined to be counterfeits, infringements, reproductions, and/or colorable imitations of Plaintiffs' respective trademarks. Although each Defendants may not copy and infringe each of Plaintiffs' individual trademarks for each category of goods protected, Plaintiffs have submitted sufficient evidence showing each Defendant has infringed, at least, one or more of the trademarks at issue. (See Zuercher Decl. ¶¶ 32-34.) Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, infringements, reproductions, and/or colorable imitations of the adidas Marks, Reebok Marks, or Mitchel & Ness Mark (collectively, "Plaintiffs' Marks."). (See Zuercher Decl. ¶ 31.)

Zuercher reviewed and visually inspected the items bearing Plaintiffs' respective trademarks offered for sale via the Internet websites operating under the partnership and/or unincorporated association names identified on Schedule "A" hereto, the Subject Domain Names, and she determined the products were non-genuine, unauthorized versions of Plaintiffs' products. (See Zuercher Decl. ¶¶ 32-34; see also Composite Exhibit A attached to the Declaration of Stephen M. Gaffigan in Support of Plaintiffs' Application for TRO.)

8

### III.   LEGAL STANDARD

Plaintiffs have filed claims pursuant to 15 U.S.C. §§ 1114(1)(a), 1125(a), and 1125(d) and The All Writs Act, 28 U.S.C §1651(a). Title 15 U.S.C. section 1116(a) provides the Court "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116. Injunctive relief is also available under section 1116(a) for a violation of section 1114(1)(a). See 15 U.S.C. § 1116(d)(1)(A).

In order to obtain a temporary restraining order, a party must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non- movant; and (4) that the entry of the relief would serve the public interest." Schiavo ex. rel Schindler v. Schiavo, 403 F.3d 1223, 1225–26 (11th Cir. 2005); see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc., 51 F. 3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney only if:

> **(A)** specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party or can be heard in opposition; and
>
> **(B)** the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b). Ex Parte temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer." Granny Goose Foods, Inc. v. Brotherhood of

Teamsters & Auto Truck Drivers Local No. 70 of Alameida Cnty., etc., 415 U.S. 423, 439 (1974).

With respect to scope, generally, "persons who are not actual parties to the action or in privity with any of them may not be brought within the effect of a[n injunctive] decree merely by naming them in the order." 11C WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 2956 at 335–36 (2d ed. 1995) (footnote omitted). However, "a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control." Golden State Bottling Co. v. NLRB, 414 U.S. 168, 180 (1973) (citing Regal Knitwear Co. v. NLRB, 324 U.S. 9, 14 (1945)); see also Fed. R. Civ. P. 65(d)(2). Specifically relevant to this case, 15 U.S.C. section 1114(2)(D) implicitly provides the Court with authority to request or order "[a] domain name registrar, domain name registry, or other domain name registration authority . . . [to] deposit[]with a court, in which an action has been filed regarding the disposition of the domain name, documents sufficient for the court to establish the court's control and authority regarding the disposition of the registration and use of the domain name." 15 U.S.C. §§ 1114(2)(D)(i)–(ii).

## IV.   DISCUSSION

### A.   Probability of Success on the Merits

#### 1.   Counterfeiting and Infringement – 15 U.S.C. § 1114

Section 32 of The Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." To prevail on their trademark infringement claim, Plaintiffs must demonstrate "(1) that [they] had prior rights to the mark at issue and (2)

that the defendants had adopted a mark or name that was the same, or confusingly similar to [their] mark, such that consumers were likely to confuse the two." Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1193 (11th Cir. 2001) (citing Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 360 (11th Cir. 1997) (internal citation omitted)).

To evaluate likelihood of consumer confusion in a Lanham Act trademark claim, the Eleventh Circuit has developed a seven factor balancing test. See Dieter v. B & H Indus. of Sw. Fla., Inc., 880 F.2d 322, 326 (11th Cir. 1989). The seven factors are: "(1) type [or strength] of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (3) similarity of the parties' retail outlets and customers; (5) similarity of advertising media; (6) defendant's intent; and (7) actual confusion." Lipscher v. LRP Publ'ns, Inc., 266 F.3d 1305, 1313 (11th Cir. 2001); see also Dieter, 880 F.2d at 326; Safeway Stores, Inc. v. Safeway Disc. Drugs, Inc., 675 F.2d 1160, 1164 (11th Cir. 1982). No single factor is dispositive. Lipscher, 266 F.3d at 1313.

The Court has considered these seven factors in light of the submissions provided by Plaintiffs and concludes the balance of factors indicates there is a likelihood consumers would confuse Defendants' Websites and products with Plaintiffs' genuine versions. In particular, the submissions provided by Plaintiffs support the strength of Plaintiffs' Marks, show that the goods produced and sold by Defendants are nearly identical to Plaintiffs' respective genuine products, indicate that both Plaintiffs and Defendants target the same U.S. customers on the Internet, suggest that Defendants intended to benefit from the use of Plaintiffs' respective brand reputation, and show that consumers viewing Defendants' counterfeit goods post-sale would actually confuse them for Plaintiffs' real products. Accordingly, Plaintiffs have shown a

probability of success on the merits of their trademark counterfeiting and infringement claim under section 1114.

### 2.      False Designation of Origin – 15 U.S.C. § 1125(a)

The test for liability for false designation of origin under 15 U.S.C. § 1125(a) is the same as for a trademark counterfeiting and infringement claim — i.e., whether the public is likely to be deceived or confused by the similarity of the marks at issue. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 780 (1992). As just discussed in relation to Plaintiffs' trademark counterfeiting and infringement claims, Defendants' goods are likely to be confused by consumers for Plaintiffs' genuine products. Therefore, Plaintiffs have shown a likelihood of success on Plaintiffs' claim of false designation of origin.

### 3.      Cybersquatting Claim – 15 U.S.C. § 1125(d)

The Anticybersquatting Consumer Protection Act ("ACPA") protects the owner of a distinctive or famous trademark from another's bad faith intent to profit from the trademark owner's mark by registering or using a domain name which is identical or confusingly similar to, or dilutive of, the trademark owner's mark without regard to the goods or services of the parties. See 15 U.S.C. § 1125(d). "To prevail under the ACPA, a plaintiff must prove that (1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." Bavaro Palace, S.A. v. Vacation Tours, Inc., 203 F. App'x 252, 256 (11th Cir. 2006) (citing Shields v. Zuccarini, 254 F.3d 476, 482 (3d Cir. 2001)).

As to the first element, Plaintiffs' Marks are inherently distinctive because they are arbitrary as applied to the products which they identify — i.e., they "do[] not suggest or describe the goods or services offered thereunder." Victoria's Cyber Secret Ltd. P'ship v. V Secret

Catalogue, Inc., 161 F. Supp. 2d 1339, 1349 (S.D. Fla. 2001) (citing Frehling Enters., Inc. v. Int'l Select Group, Inc., 192 F.3d 1330, 1335–36 (11th Cir. 1999)). Moreover, Plaintiffs' Marks are indisputably famous because they enjoy widespread recognition by consumers. Regarding the second element — use of confusingly similar domain names — Plaintiffs allege many of the Defendants at issue have registered domain names allegedly used by Defendants to sell counterfeit versions of Plaintiffs' products. (See Schedule A attached to Plaintiffs' Application for TRO.)[2]  Plaintiffs have provided sufficient evidence in their submissions to support the conclusion that these domain names are confusingly similar to at least some of Plaintiffs' Marks. With regard to the third element — whether Defendants registered the domain names with the bad faith intent to profit — the Court has considered the nine factors laid out in 15 U.S.C. § 1125(d)(1)(B)(i)(I)–(IX) and concludes the submissions provided by Plaintiffs adequately demonstrate Defendants registered the Subject Domain Names in bad faith to attract customers using Plaintiffs' Marks to sell them counterfeit versions of Plaintiffs' products. Consequently, Plaintiffs have shown a likelihood of success on the merits of their section 1125(d) claim.

### 4.      Unfair Competition – Florida Common Law

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. Rolex Watch U.S.A., Inc. v. Forrester, No. 83–8381–Civ-Paine, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement,

---

[2] The Court may seize control of the remaining Subject Domain Names which do not themselves contain any Plaintiffs' Marks because the websites associated with those domain names allegedly promote and offer for sale goods which infringe Plaintiffs' Marks in violation of sections 1114 and 1125(a). See Tiffany (NJ), LLC v. Zheng, 11-60171-Civ-Altonaga, at 9 (S.D. Fla. Feb. 1, 2011) (D.E. 13).

false designation of origin, and unfair competition under the common law of Florida, is set forth in <u>John H. Harland, Inc. v. Clarke Checks, Inc.</u>, 711 F.2d 966, 972 (11th Cir. 1983.)") As discussed in relation to Plaintiffs' trademark counterfeiting and infringement claims, Plaintiffs established there is a likelihood of confusion regarding Defendants' use of Plaintiffs' Marks on their counterfeit and infringing products. As such, Plaintiffs have also shown a likelihood of success on the merits of their common law unfair competition claim.

### B.   Irreparable Injury

The Eleventh Circuit has acknowledged that "once a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim,"[3] there is a "presumption of irreparable harm." <u>N. Am. Med. Corp. v. Axiom Worldwide, Inc.</u>, 522 F.3d 1211, 1227 (11th Cir. 2008); <u>see also</u> <u>McDonald's Corp. v. Robertson</u>, 147 F.3d 1301, 1310 (11th Cir. 1998). However, the strength of this presumption has been called into question by the Supreme Court's decision in <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388 (2006).  <u>See</u> <u>N. Am. Medical Corp.</u>, 522 F.3d at 1228.  After <u>eBay</u>, a court may grant preliminary injunctive relief "without the benefit of a presumption of irreparable injury," or may "decide that the particular circumstances of the instant case bear substantial parallels to previous cases such that a presumption of irreparable injury is an appropriate exercise of its discretion in light of the historical traditions." <u>Id</u>.

As already discussed, based on Plaintiffs' submissions to this point, there is a substantial likelihood that consumers will incorrectly believe Defendants' Websites and products are approved or sponsored by Plaintiffs. Although the Court may be permitted to presume irreparable harm from the likely consumer confusion in this case, it is not necessary to rely on a presumption. The operation of Defendants' Websites displaying Plaintiffs' Marks and the sale of

---

[3] As discussed in the legal standard section *supra*, injunctive relief is available on each of Plaintiffs' four claims, not only the trademark infringement claim. 15 U.S.C. § 1116(a).

Defendants' inferior goods to consumers is likely to cause irreparable damage to Plaintiffs' respective reputations if it continues because Plaintiffs will not have the ability to control the quality of what appears to be their products in the marketplace. This damage to Plaintiffs' respective reputations and goodwill could not be easily quantified nor could it be undone through an award of money damages. See Paulsson Geophysical Servs., Inc. v. Sigmar, 529 F.3d 303, 313 (5th Cir. 2008).

### C.    The Balance of Hardships

The Court is satisfied after reviewing Plaintiffs' submissions that the risk to the reputation and goodwill associated with Plaintiffs' Marks should Defendants' infringing activities continue outweighs any hardship to Defendants caused by enjoining those activities. It does not appear that Defendants will suffer any legitimate hardship if a temporary restraining order is issued because they have no legal right to use Plaintiffs' Marks on their websites or to sell counterfeit versions of Plaintiffs' products.

### D.    Public Interest

The public has an interest in not being misled as to the origin, source, or sponsorship of trademarked products. See Nike, Inc. v. Leslie, 227 U.S.P.Q. 574, 575 (1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."); Nailtiques Cosmetic Corp. v. Salon Sciences, Corp., 41 U.S.P.Q.2d 1995, 1999 (1997) (citing Scarves By Vera, Inc. v. Todo Imports Ltd., 544 F.2d 1167 (2d Cir. 1976)) ("The interests of the public in not being victimized and misled are important considerations in determining the propriety of granting injunctive relief."). Here, Plaintiffs' have demonstrated that Defendants' Websites and products mislead consumers into believing they are approved or

sponsored by Plaintiffs and make it more difficult for a consumer to be sure he or she is purchasing Plaintiffs' genuine products.

## V.    CONCLUSION

Based on Plaintiffs' Complaint, Application for TRO, and evidentiary submissions, the undersigned concludes that the four-part test for injunctive relief has been satisfied. Moreover, because providing notice of this suit before granting injunctive relief would allow Defendants to funnel traffic to their current websites to new domains and allow Defendants to continue selling counterfeit products, a temporary restraining order should issue.

Accordingly, it is **ORDERED AND ADJUDGED** that pursuant to 15 U.S.C. § 1116, Fed. R. Civ. P. 65, The All Writs Act, 28 U.S.C §1651(a) and this Court's inherent authority, Plaintiffs' Ex Parte Application for TRO is **GRANTED** as follows:

(1)    Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby temporarily restrained:

(a)    From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the adidas Marks, Reebok Marks and/or Mitchell & Ness Mark, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiffs; and

(b)    From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiffs, bearing the adidas Marks, Reebok Marks and/or Mitchell & Ness Mark, or any confusingly similar trademarks; or (ii) any evidence

16

relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing the adidas Marks, Reebok Marks and/or Mitchell & Ness Mark, or any confusingly similar trademarks.

(2)     Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue the use of the adidas Marks, Reebok Marks and/or Mitchell & Ness Mark, or any confusingly similar trademarks, on or in connection with all Internet websites owned and operated, or controlled by them including the Internet websites operating under the Subject Domain Names;

(3)     Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue the use of the adidas Marks, Reebok Marks and/or Mitchell & Ness Mark, or any confusingly similar trademarks within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to websites registered by, owned, or operated by each Defendant, including the Internet websites operating under the Subject Domain Names;

(4)     Each Defendant shall not transfer ownership of the Subject Domain Names during the pendency of this Action, or until further Order of the Court;

(5)    The domain name Registrars for the Subject Domain Names are directed to transfer to Plaintiffs' counsel, for deposit with this Court, domain name certificates for the Subject Domain Names;

(6)    Upon Plaintiffs' request, the privacy protection service for any Subject Domain Names for which the Registrant uses such privacy protection service to conceal the Registrant's identity and contact information are ordered to disclose to Plaintiffs the true identities and contact information of those Registrants;

(7)    Upon entry of this Order, Plaintiffs shall provide a copy of the Order by email to the registrar of record for each of the Subject Domain Names, so that the registrar of record of each of the Subject Domain Names may, in turn, notify each registrant of the Order and provide notice of the locking of the domain name to the registrant of record. After providing such notice to the registrars so the domain names may be locked, Plaintiffs shall also provide notice and a copy of this Order to the registrant of each Subject Domain Name via email to the email address provided as part of the domain registration data for each of the Subject Domain Names identified in the Application for TRO. If an email address was not provided as part of the domain registration data for a Subject Domain Name, Plaintiffs shall provide notice and a copy of this Order to the operators of the Internet websites via an email address and/or online submission forms provided on the Internet websites operating under such Subject Domain Names. After forty-eight (48) hours have elapsed after the emailing of this Order to the registrars of record and the registrants, Plaintiffs shall provide a copy of this

Order to the registrars and the registries for the Subject Domain Names for the purposes described in Paragraph 8, below.

(8)   The domain name Registrars for the Subject Domain Names shall immediately assist in changing the Registrar of record for the Subject Domain Names, excepting any such domain names which such Registrars have been notified in writing by Plaintiffs have been or will be dismissed from this action, to a holding account with a Registrar of Plaintiffs' choosing (the "New Registrar"). To the extent the Registrars do not assist in changing the Registrars of record for the domains under their respective control within one (1) business day of receipt of this Order, the top-level domain (TLD) Registries (or their administrators) for the Subject Domain Names, within five (5) business days of receipt of this Order, shall, change or assist in changing, the Registrar of record for the Subject Domain Names, excepting any such domain names which such Registries have been notified in writing by Plaintiffs have been or will be dismissed from this action, to the New Registrar. As a matter of law, this Order shall no longer apply to any Defendant or associated domain name dismissed from this action. Upon the change of the Registrar of record for the Subject Domain Names, the New Registrar will maintain access to the Subject Domain Names in trust for the Court during the pendency of this action. Additionally, the New Registrar shall immediately institute a temporary 302 domain name redirection which will automatically redirect any visitor to the Subject Domain Names to the following Uniform Resource Locator ("URL") http://servingnotice.com/adiserp5/ whereon copies of the Complaint, and all other documents filed in this action are displayed.

Alternatively, the New Registrar may update the Domain Name System ("DNS") data it maintains for the Subject Domain Names, which link the domain names to the IP addresses where their associated websites are hosted, to NS1.MEDIATEMPLE.NET and NS2.MEDIATEMPLE.NET, which will cause the domain names to resolve to the website where copies of the Complaint, Orders, and all other documents on file in this action will be displayed. After the New Registrar has effected this change the Subject Domain Names shall be placed on Lock status, preventing the modification or deletion of the domains by the Registrar or Defendants;

(9)     Plaintiffs may enter the Subject Domain Names into Google's Webmaster Tools and cancel any redirection of the domains that have been entered there by Defendants which redirect traffic to the counterfeit operations to a new domain name or website and thereby evade the provisions of this Order;

(10)    Each Defendant shall preserve copies of all their computer files relating to the use of any of the Subject Domain Names and shall take all steps necessary to retrieve computer files relating to the use of the Subject Domain Names and that may have been deleted before the entry of this Order;

(11)    This Temporary Restraining Order shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction set forth below, or until such further dates as set by the Court or stipulated to by the parties;

(12)    This Temporary Restraining Order shall apply to the Subject Domain Names, associated websites, and any other domain names and websites properly brought to the Court's attention and verified by sworn affidavit that such new domain

20

names are being used by any Defendant for the purpose of counterfeiting the adidas Marks, Reebok Marks and/or Mitchell & Ness Mark at issue in this action and/or unfairly competing with Plaintiffs on the World Wide Web;

(13)   Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Fed. R. Civ. P. 65(c), Plaintiffs shall post a bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court;

(14)   A hearing is set before this Court in the United States Courthouse located 400 North Miami Avenue, Miami, Florida 33128, Courtroom 12-1, on _Dec 31_____, 2013, at _9.15AM_ at which time Defendants and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on Plaintiffs' requested preliminary injunction;

(15)   Plaintiffs shall serve copies of the Complaint, Application for TRO, this Order, and all other pleadings and documents on file in this action on each Defendant by email as described above and by posting copies of the Application for TRO and this Order on the website located at http://servingnotice.com/adiserp5/ within forty-eight (48) hours of control of the Subject Domain Names being changed to the Court via the New Registrar's holding account, and such notice so given shall be deemed good and sufficient service thereof. Plaintiffs shall continue to provide notice of these proceedings and copies of the documents on file in this matter to Defendants by regularly updating the website located at

http://servingnotice.com/adiserp5/ or by other means reasonably calculated to give notice which is permitted by the Court.

(16)     Any response or opposition to Plaintiffs' Motion for Preliminary Injunction must be filed with the Court and served on Plaintiffs' counsel by _11 AM_ on _Dec 24_, 2013, which is ~~forty-eight (48) hours~~ prior to the hearing set for _9:15am on 12/31_, 2013 and, filed with the Court, along with Proof of Service. Plaintiffs shall file any Reply Memorandum no later than _11 AM_ on _12/30_, 2013. The above dates may be revised upon stipulation by all parties and approval of this Court. **Defendants are hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d) and Fed. R. Civ. P. 65.**

This Temporary Restraining Order expires on _at 11:00am on 12/31_, 2013, unless extended for good cause.

**DONE AND ORDERED** in Chambers at Miami, Florida, this _17_ day of _Dec_, 2013, at _11:11 am_

~~JOAN A. LENARD~~  John O'Sullivan
UNITED STATES ~~DISTRICT~~ JUDGE
_MAG. STATE_

cc:     counsel of record

22

**SCHEDULE "A"**
**DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAMES**

| Defendant Number | Defendant / Domain Name |
|---|---|
| 1 | adidas2013online.com |
| 1 | adidasadipure2013.com |
| 1 | adidasjswings3.com |
| 1 | adidasneoshoes.com |
| 1 | buyadidasshoesaustralia.com |
| 1 | buyjeremyscott2013.com |
| 1 | cheapderrickroseshoes.com |
| 1 | jeremyscottauonline.com |
| 1 | messi7f50.com |
| 1 | newadidasshoescanada.com |
| 2 | 2013adizerof50.com |
| 2 | chaussuredefootjunior.com |
| 2 | cramponsfootballpascher.com |
| 2 | ctr360black.com |
| 2 | f50cleatsforkids.com |
| 2 | futsalforsale.com |
| 2 | messif50adizeros.com |
| 2 | messinewboots.com |
| 2 | predatorlzii.com |
| 2 | tiempoblue.com |
| 3 | 2013adizeromessi.com |
| 3 | 2013f50cleats.com |
| 3 | billigereebok.com |
| 3 | f30cleats.com |
| 3 | fotbollsskorbilligt.com |
| 3 | messinewf50.com |
| 4 | 2013cleatsnew.com |
| 4 | adizerof502u.com |
| 4 | headsoccersales.com |
| 4 | mercurialbetterworld.com |
| 4 | messif50adizero.com |
| 4 | newmessishoes.com |
| 4 | proairmaxsales.com |
| 4 | prousasoccer.com |
| 5 | 2013footballboots.com |
| 5 | 2013newctr360.com |
| 5 | adidaslethalzones2.com |

| | |
|---|---|
| 5 | chaussuresfootf50.com |
| 5 | chaussuresfootjunior.com |
| 5 | clearancesoccershoes.com |
| 5 | copamundialfootballboots.com |
| 5 | ctr360soccershoes.com |
| 5 | f50chaussures.com |
| 5 | f50new.com |
| 5 | lzpredators.com |
| 5 | newadizero.com |
| 5 | newf50boots.com |
| 5 | neymarshoes.com |
| 5 | pinksoccershoes.com |
| 5 | predatoradidas2013.com |
| 5 | ronaldinhotiempo.com |
| 5 | tiemposhoes.com |
| 6 | 2013newsoccer.com |
| 6 | adipuresoccer.com |
| 6 | cheapnewsoccer.com |
| 6 | f50adizero.com |
| 6 | f50soccerboot.com |
| 6 | neweliteshoes.com |
| 6 | predatorcleats.com |
| 6 | worldcupcleats.com |
| 7 | 2013jeremyscottshoes.com |
| 7 | adidasjeremyscottnew.com |
| 7 | adidasjswings20.com |
| 7 | adidasjswings20sale.com |
| 7 | jeremyscottbear.com |
| 7 | jeremyscottshoeoutlet.com |
| 7 | jeremyscottshoesoutletsale.com |
| 8 | addidasjeremyscottwing.com |
| 9 | adidajapanese.com |
| 10 | 2012soccerboots.com |
| 10 | 2013newfootballboots.com |
| 10 | adidascopamundialfg.com |
| 10 | adipure11proboots.com |
| 10 | adipureblackout.com |
| 10 | adipuresoccershoes.com |
| 10 | adizerofutsal.com |
| 10 | cheapcopamundial.com |
| 10 | f50adizero3.com |

| 10 | f50indoor.com |
|---|---|
| 10 | messiboot.com |
| 10 | mif50adizero.com |
| 10 | newadizerof502013.com |
| 10 | predatorabsolionlz.com |
| 10 | redpredatorlz.com |
| 10 | t90cleats.com |
| 10 | xavipredator.com |
| 10 | yellowpredators.com |
| 12 | adidasbuyshoesjp.com |
| 13 | adidascopamundialsamba.com |
| 13 | adidaslzii.com |
| 13 | adidasnitrocharge2014.com |
| 13 | f30adizero.com |
| 14 | adidashighkutujp.com |
| 14 | adidaskutuonlinejp.com |
| 15 | adidasjeremyscottforsale.com |
| 16 | adidasjeremyscotthomme.com |
| 17 | adidasjeremyscottitaliashop.com |
| 18 | adidasjeremyscottwings20.net |
| 18 | jeremyscottbearshoes.com |
| 19 | adidasjeremysscottwings.org |
| 21 | adidasjpnewsaleshow.com |
| 21 | adidasnewsalejp.com |
| 22 | adidasmessi.com |
| 24 | adidasneoschuhe.org |
| 25 | adidasnewjpsaleshop.com |
| 25 | adidassalehotjpshop.com |
| 25 | adidassalejpshophot.com |
| 25 | adidassalenewjp.com |
| 25 | adidasshosehotjp.com |
| 26 | adidasoriginalsjeremyscotts.biz |
| 27 | adidasporschedesignpascher.com |
| 29 | adidas-porschedesigns3.com |
| 30 | adidasrunningshoe.net |
| 31 | adidasshopjapan.com |
| 32 | adidassneakersjpoutlet.com |
| 34 | adipure11prosl.com |
| 35 | adizero2013.com |
| 35 | f50messiadizero.com |
| 35 | fernandotorresshoes.com |

| | |
|---|---|
| 35 | newadizerof50.com |
| 35 | neymarboots.com |
| 35 | ronaldovapors.com |
| 36 | adizerof50japan.com |
| 36 | adizerof50tokyo.com |
| 37 | adizerojpad.info |
| 37 | cheapshoesjpad.info |
| 37 | shopsportaz.info |
| 37 | soccermvpsaz.com |
| 38 | adizerorose30.net |
| 39 | adizerorose35.com |
| 40 | adidasf50footballboots.com |
| 40 | adizerosoccercleats.com |
| 40 | f50soccershoes.com |
| 41 | airadidasmise.com |
| 41 | hotadidaskutujp.com |
| 42 | allin-adidas.com |
| 43 | boutiquereebok.com |
| 44 | buyjeremyscottwings20.com |
| 45 | buyjeremyscottwings2013.com |
| 45 | jeremyscott20-cheap.com |
| 45 | jeremyscottwingsprice.com |
| 46 | chaussurejeremyscottpascher.com |
| 47 | cheapf50adizero2222.com |
| 48 | adidass.info |
| 48 | cheapjeremyscottadidass.com |
| 49 | cheapjeremyscottuk.com |
| 50 | comprarzapatoreebok.com |
| 51 | f50adizero2014.com |
| 51 | nitrochargeboots.com |
| 52 | f50adizerosoccers.com |
| 53 | f50paschers.com |
| 54 | adidas-withwings.com |
| 54 | adidaswithwingss-us.com |
| 54 | adidaswithwings-us.com |
| 54 | jeremyscoot-fr.com |
| 54 | jeremyscottwing-fr.com |
| 54 | jssadidas-us.com |
| 54 | jswingsinusa.com |
| 54 | js-wings-us.com |
| 55 | jeremyscott2013.com |

| 56 | jeremyscottadidas2013.com |
|---|---|
| 57 | jeremyscottadidasok.net |
| 58 | jeremyscottbox.com |
| 60 | jeremyscottshoesusa.com |
| 61 | jeremyscottusawings.com |
| 62 | jeremyscottadidasbox.com |
| 62 | jeremyscottshoesbox.com |
| 62 | jswings2013box.com |
| 62 | jswingsshoesbox.com |
| 63 | jswings2013outlet.com |
| 63 | jswingschaussure.com |
| 63 | mlb-jerseysus.com |
| 63 | nbajerseysshoponline.com |
| 64 | jeremyscottpandabox.com |
| 64 | jswings2013shoes.com |
| 64 | nfljerseysworldstore.com |
| 64 | ownjeremyscottshoes.com |
| 65 | porschedesignshoes2013.com |
| 66 | reebokbilligtonline.com |
| 67 | reebokforwholesale.com |
| 68 | reebokskodk.com |
| 69 | reeboksportschuh.com |
| 70 | salejsadidas.com |
| 71 | usashoes2013.com |
| 72 | addidasonsale.com |
| 73 | adiasshoescheap.com |
| 74 | adidasadizerobox.com |
| 75 | adidasfactoryoutlet.com |
| 76 | adidasforum.net |
| 76 | adidasjeremyscottblack.net |
| 76 | adidasjeremyscottgold.com |
| 76 | adidasjswings2.net |
| 77 | adidasitalia.org |
| 78 | adidasjeremyscott01.com |
| 79 | adidasjeremyscottchaussure.com |
| 80 | adidasoriginal.eu |
| 81 | adidasoriginalpascher.net |
| 82 | adidasoriginalprix.com |
| 83 | adidasoriginalssuperstar.com |
| 84 | adidasrose3sale.com |
| 85 | adidassaleshop.com |

| 86  | adidasshoessale.org |
| 87  | adidasskorrea.com |
| 88  | adidasskotilbud.org |
| 89  | adidassneakerjapan.com |
| 90  | adidassneakers1.com |
| 91  | adidaswingss-fr.com |
| 92  | adisjeremyscott.com |
| 93  | adizerorose3.org |
| 94  | buyjeremyscott-kids.com |
| 95  | buyjeremyscottsneakers.com |
| 95  | jeremyscott2013shoes.com |
| 96  | cheapairjordan11bred.com |
| 97  | derrickrosenewshoes2013.com |
| 98  | drose35.com |
| 98  | lebronjames2013.com |
| 99  | dwyanewadeshoes2012.com |
| 100 | ejeremyscottwings2nd.net |
| 101 | iadidasshoes.com |
| 102 | jeremyscott2u.info |
| 103 | jeremyscottbearsneakers.com |
| 104 | jeremyscottsbox.com |
| 105 | jeremyscottshop-fr.com |
| 106 | jeremyscottteddybearbox.com |
| 106 | jeremyscottteddybox.com |
| 107 | jeremyscottukwings.com |
| 108 | jeremyscott-wings.biz |
| 109 | jeremyscottwings-fr.com |
| 110 | kevindurantshoesale.com |
| 110 | kobeshoesplayoff.com |
| 111 | nikehut.org |
| 112 | 2014worldcup.eu |
| 113 | camisetasrm.com |
| 114 | nouvellecollectionjeremyscottwings.com |
| 115 | nr1store.com |
| 116 | scarpedacalcio4vendita.com |
| 117 | soloffer2008.co |
| 118 | thejerseyhouse.org |
| 119 | wholesaleauthenticnfljersey.com |